UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GREGORY FIELD,
    *Plaintiff*,

v.

CITY OF HARTFORD *et al.*,
    *Defendants*.

No. 3:18-cv-01803 (JAM)

## ORDER GRANTING MOTION TO DISMISS

Plaintiff Gregory Field has sued the City of Hartford, the mayor, and three city employees alleging that they violated his rights under the U.S. Constitution and Connecticut law. Field complains about two incidents when city employees entered his property. For the reasons set forth below, I will dismiss the complaint without prejudice for failure to state a claim upon which relief can be granted.

### BACKGROUND

Field has filed this *pro se* action against the City of Hartford as well as several city officials including the City's mayor (Luke Bronin), a city attorney (Lisa Silvestri), a senior project manager in the City's Blight Remediation Division (Gustavo Espinoza), and the director of the City's Blight Remediation Division (Laura Settlemyer).[1] He has sued the individual defendants in both their official and individual capacities. Doc. #1-1 at 6-7.

The following facts as set forth in the operative complaint are accepted as true only for the purposes of this ruling. Field lives in a house on Nepaug Street in Hartford. *Id.* at 6. He suffers from bipolar disorder and experiences crippling depression, anxiety, and panic attacks. *Id.* at 4.

---

[1] The complaint misspells the name of defendant Laura Settlemyer as Laura Settlemeyer. The Clerk of Court shall amend the case caption to correctly spell her name.

According to Field, the City and the individual defendants selectively enforced city ordinances against him because of his mental illness. *Id.* at 3, 8 (¶ 4). Although Field's complaint describes by way of background a long history of litigation with the City of Hartford, the focus of his claims are two incidents involving trespasses on his property that occurred in October 2016 and August 2017.

### *The first incident*

The first of these incidents occurred on October 5, 2016, when a police officer named Faienza "entered the plaintiff's property, walked onto the grass to the house and in front of the plaintiff's car, and placed a Hartford Parking Authority street citation on the windshield which faced the house, with the word 'zoning' circled and [a] $99 fine indicated." *Id.* at 12 (¶ 13). The citation threatened to tow Field's car. *Ibid.* Field alleges that the citation was related to a municipal code provision that bans parking "in front of the 'building line,'" and that the code was being selectively enforced against him because others who parked their cars in the same way were not ticketed. *Ibid.*

Faienza also placed a citation notice on Field's front door with photographs of Field's vehicle and a note requesting contact information for the owner of the house. Field alleges that these photographs indicate that "Faienza had walked all over the property." *Id.* at 14 (¶ 15). Field maintains that he "was clearly singled out and targeted for psychological bludgeoning, intimidation, and harassment, fueled by bigotry and prejudice based on his mental disabilities, and with the intent to prey upon those disabilities and emotional vulnerabilities." *Ibid.* In his view, "[t]his citation was a clear 14th [A]mendment violation of the plaintiff's right to due process, clearly intended to circumvent due process, clear harassment and intimidation, and a

demonstration of the defendants' propensity to make up their own rules and procedures as they see fit, regulations be damned." *Id.* at 15 (¶ 15).

Field has not named Faienza as a defendant in this case. But he alleges that Faienza was acting "at the direction" of defendant Gustavo Espinoza, a senior project manager in the City's Blight Remediation Division. *Id.* at 14-15 (¶ 15). According to Field, Espinoza "recruited officer Faienza to do his dirty work from behind a police badge and gun." *Id.* at 13 (¶ 14).

After several days, Field contacted Faienza's supervisor who "disclosed that Faienza had acted at the direction of defendant Espinoza" and that "Faienza was advised by the defendant attorney Lisa Silvestri of [C]orporation [C]ounsel, directly or through defendant Espinoza, that Faienza's entry onto the plaintiff's property to search, inspect, take photographs, issue the citation for the car on the property, and other official actions while on the property, was legal and not subject to 4th Amendment or other restrictions." *Id.* at 16 (¶ 16).

The complaint in turn references and attaches an excerpt of an email communication that Field alleges he was forwarded from Faienza's supervisor in which Silvestri stated that "[t]he officer can issue a ticket" for certain violations of the city's ordinances. *Id.* at 17 (¶ 18); *see also id.* at 40 (copy of email). Apart from its statement about the legal authority of an officer to issue a ticket for certain violations, the email does not state that Silvestri purported to authorize any entry on Field's property.

Field contacted the Corporation Counsel and Silvestri herself to determine whether Silvestri had "endorsed" the actions of Espinoza or Faienza but received no response. *Id.* at 19 (¶ 21). In light of the lack of response, "plaintiff logically presumed Silvestri to be complicit in conspiring to violate the civil rights of the plaintiff, endorsing unlawful acts on the part of

3

defendant Espinoza and officer Faienza, and therefore did not want to be confronted or held accountable." *Id.* at 20 (¶ 22).

Field appealed the parking citation to the local court, and the citation was summarily dismissed on October 13, 2016. *Ibid.* (¶ 23). Nevertheless, having to defend the citation caused Field extreme anxiety. *Ibid.*

### *The second incident*

The second incident took place on the afternoon of August 4, 2017, when Espinoza "apparently at the behest of defendant Laura Settlemyer, entered the plaintiff's property and affixed another crude and non standard notice to the front door of the property." *Id.* at 20-21 (¶ 26). Espinoza used "duct tape which left a difficult to clean sticky residue in the summer sun." *Ibid.*

The notice advised Field that in accordance with a city-wide survey conducted by the Blight Remediation Team, his property was found to be in violation of the Anti-Blight and Property-Maintenance Ordinance and he may be subject to large fines and liens against his property. *Id.* at 21 (¶ 27). Field vehemently denies that his property had any of the alleged conditions giving rise to the violation. *Id.* at 22-24 (¶¶ 27-30).

When Field confronted Settlemyer about the notice, "Settlemyer attempted to backpedal," and Field "told Settlemyer that she was giving a laudable Kellyanne Conway performance but couldn't so easily weasel out of ultimate responsibility given the physical evidence in hand." *Id.* at 22 (¶ 27). Moreover, according to Field, there is no provision in the Hartford ordinances that allows for "a notice of violation[] to be affixed to the front door of any property in question in lieu of the mandated US Mail process," and "[t]here is no provision that provides for or dictates unconditional warrantless entry onto private property." *Id.* at 27 (¶ 33).

As to the involvement of Mayor Bronin, the complaint alleges that "[a]s of October of 2017 Hartford mayor Luke Bronin had been duly informed about the activities of the defendants with regard to the plaintiff and the events described herein, and to this date has done nothing to acknowledge or address these issues." *Id.* at 29 (¶ 36).

Field alleges that the defendants violated his constitutional rights to be free from unreasonable searches and seizures under the Fourth Amendment as well as his rights to due process and equal protection of the law under the Fourteenth Amendment. He further claims defendants violated various sections of Article First of the Connecticut Constitution, and he alleges counts of state common law negligence, intentional infliction of emotional distress, and loss of enjoyment of life.

Defendants have moved to dismiss the complaint. They argue that the individual defendants have not been properly served and that Field has not otherwise alleged facts that give rise to plausible grounds for relief. Doc. #24.[2]

## DISCUSSION

### A. *Service of process*

The individual defendants move to dismiss the claims against them on the ground that Field has not properly served them with the complaint. Rule 12(b)(5) of the Federal Rules of Civil Procedure allows for dismissal on grounds of insufficient service of process. If a defendant moves to dismiss for failure to serve adequate process under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service. *See Dickerson v. Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010).

---

[2] Although Field alleges that defendants have not fully complied with the *pro se* notice requirements of D. Conn. L. Civ. R. 12, any possible defect in defendants' notice has not caused prejudice. *See Inkel v. Conn.*, 2019 WL 1230358, at *3, n.2 (D. Conn. 2019) (granting motion to dismiss despite partial noncompliance with Local Rule 12(a) where noncompliance did not prejudice plaintiffs).

For purposes of a federal court civil action, Rule 4 of the Federal Rules of Civil Procedure specifies the various ways a plaintiff may validly serve process on a defendant. In general, a plaintiff may serve a defendant by "delivering a copy of the summons and of the complaint to the individual personally," or by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there," or by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). The record here does not show that Field ever served any of the individual defendants personally or at their residences or by means of any formally designated agent for service of process.

Alternatively, Rule 4 allows for a plaintiff to serve a defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under Connecticut state law, "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52–57(a). In addition, Connecticut law provides that "in civil actions against . . . an employee of a town, city or borough in a cause of action arising from the employee's duties or employment," process "shall" be served "upon the clerk of the town, city or borough, provided two copies of such process shall be served upon the clerk and the clerk shall retain one copy and forward the second copy to the employee." Conn. Gen. Stat. §52-57(b)(7).

According to Field, he served the individual defendants by serving two copies of the complaint on the City Clerk of Hartford in accordance with Conn. Gen. Stat. § 52-57(b)(7). Doc. #35 at 3. Defendants do not dispute that Field served the copies on the City Clerk, but insist that such service of process on a municipal clerk in accordance with section 52-57(b)(7) suffices only

6

to allow Field's claims to proceed against the individual defendants in their *official* capacity rather than their *personal* capacity. Doc. #39 at 3-4. Defendants contend that if Field wished to proceed against any of the individual defendants in their personal capacity, then he should have served them in person or at their home under section 52-57(a).[3]

I do not agree. Because there is no guidance from the Connecticut Supreme Court on this issue, I start with the words of the statute, mindful that for purposes of the interpretation of a Connecticut statute "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes," and that "[i]f . . . the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Conn. Gen. Stat. Ann. § 1-2z; *see also Dep't of Transportation v. White Oak Corp.*, 332 Conn. 776, 782-83 (2019) (citing § 1-2z and noting the "fundamental objective is to ascertain and give effect to the apparent intent of the legislature").

The words of section 52-57(b)(7) do not draw any distinction between service of process for official-capacity purposes and personal-capacity purposes, a contrast tellingly stressed elsewhere in Connecticut's service-of-process statute. *See, e.g.*, Conn. Gen. Stat. § 52-64(b) (providing that for prisoner-plaintiff lawsuits against state employees that "service of process on all defendants in such civil action, *who are sued in their official capacity*" (emphasis added),

---

[3] By way of background, there are important distinctions in the context of a civil rights lawsuit pursuant to 42 U.S.C. § 1983 for a claim against a government official in his or her official capacity and his or her personal capacity. A personal-capacity lawsuit seeks to impose personal liability against the official while an official-capacity lawsuit is in all respects to be treated like a suit against the governmental entity itself. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Because a governmental entity is not liable under section 1983 for the constitutional violations of individual employees absent a showing that the entity itself had a policy, practice, or custom that caused the constitutional violation, *ibid.*, it is generally more difficult for a plaintiff to establish official-capacity liability than personal-capacity liability. Another difference is that personal-capacity lawsuits are subject to personal immunity defenses such as absolute or qualified immunity, while official-capacity lawsuits are subject only to the defenses available to a government entity, such as sovereign immunity. *Id.* at 166-67.

shall be made by service on the Connecticut Attorney General). That the legislature did not draw this distinction in section 52-57(b)(7) strongly suggests it was not intended. *See State v. Denson*, 67 Conn. App. 803, 811 (2002) ("[W]e must presume that when the legislature uses different language, the legislature intends a different meaning of one statute from the other."), *cert. denied*, 260 Conn. 915 (2002).

Interpreting the statute in this way makes sense. The Connecticut legislature could well have concluded that a municipal employee should not be disturbed in person or at home by process-servers whenever a litigant might decide to sue the employee for actions the employee took in the course of the employee's municipal job duties. This rationale also explains why the legislature chose to require that such a lawsuit be served with *two* copies on the municipal clerk and that the municipal clerk must in turn forward one of the copies of the lawsuit to the employee to ensure that the employee has actual notice.[4] Indeed, if the legislature intended to additionally require that a plaintiff serve a municipal employee in person or at home under section 52-57(a), the requirement that the municipal clerk forward the process to the municipal employee would be largely redundant.

It seems to me that the words of the statute are clear. They mandate a specific method of service for lawsuits against municipal employees without suggesting any distinction between official-capacity and individual-capacity claims. The statutory history further supports the conclusion that service in accordance with section 52-57(b)(7) is sufficient for all types of claim purposes. Prior to its amendment in 2003, the statute provided as follows:

> (b) Process in civil actions against the following-described classes of defendants shall be served as follows: . . . (7) against an

---

[4] Connecticut trial courts have ruled that section 52-57(b)(7) applies only for current—rather than former—municipal employees. *See, e.g.*, *Ellison v. Macci*, 2016 WL 3202486, at *3-*5 (Conn. Super. Ct. 2016). This is understandable in light of the difficulty that a municipal clerk may have in locating a former employee, and there is no claim here that any of the defendants are no longer employed by the City of Hartford.

8

> employee of a town, city or borough in a cause of action arising
> from the employee's duties or employment, upon (A) the clerk of
> the town, city or borough, provided two copies of such process
> shall be served upon the clerk and the clerk shall retain one copy
> and forward the second copy to the employee, or (B) the
> employees pursuant to subsection (a) of this section.

2003 Conn. Legis. Serv. P.A. 03-278 (H.B. 6699). Thus, the statute used to allow for service on an employee for a lawsuit arising from the employee's duties or employment *either* by means of service on the city/town clerk *or* by means of direct service on the employee or at his usual place of abode as provided under section 52-57(a). The 2003 amendment to the statute—and its mandatory language which now requires that such actions "shall be served" in the specified manner under section 52-57(b)—suggests that the Connecticut legislature chose to spare municipal employees from being subject to in-person or at-home service in lieu of mandatory service on the city/town clerk who in turn is obliged to forward the process to the employee.

Defendants acknowledge that there are no cases that construe section 52-57(b)(7) as they urge. Instead, they argue by analogy to the Connecticut Supreme Court's interpretation of a wholly different statute that governs service of process on *state* employees as distinct from *municipal* employees. *See* Conn. Gen. Stat. § 52-64(a). For actions against state employees, that separate statute requires service of process on the Connecticut Attorney General, and the Connecticut Supreme Court has construed the statute to mean that—in the absence of in-person or at-home service of process under section 52-57(a)—a plaintiff's service of process on the Attorney General pursuant to section 52-64(a) is sufficient solely for an official-capacity suit. *See Harnage v. Lightner*, 328 Conn. 248, 254 (2018); *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 507-08 (2d Cir. 2006).[5]

---

[5] *But see Williams v. Foley*, 2016 WL 4497746, at *5-*7 (D. Conn. 2016) (discussing significant reasons not discussed in *Harnage* or *Bogle-Assegai* to question whether service on the Attorney General pursuant to the *revised*

9

In view of the different context and quite different wording of section 52-57(b)(7), I am not convinced that the Connecticut Supreme Court would impose the same official-capacity limitation on section 52-57(b)(7) as it has on section 52-64(a). Most significantly, unlike the requirement in section 52-57(b)(7) for the municipal clerk to forward a copy of the lawsuit to the municipal employee being sued, section 52-64(a) does not require the Attorney General to send anything to the state employee. Because the ultimate purpose of all service-of-process laws is to give defendants actual notice of lawsuits, it is reasonable to conclude, as the Connecticut Supreme Court did, that only personal or at-home service suffices to serve a suit seeking to impose personal liability on a state employee.

In short, I conclude that when a plaintiff serves process against a municipal employee in accordance with the requirements of Conn. Gen. Stat. § 52-57(b)(7), the plaintiff has served that employee in both the employee's official and personal capacity. Accordingly, I will deny the individual defendants' motion to dismiss insofar as they seek dismissal of the claims against them in their personal capacity for failure to properly serve process.

### B. *Failure to state a claim*

Defendants next argue that the complaint must be dismissed because it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). For purposes of a motion to dismiss for failure to state a claim, the Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018).

---

version of Conn. Gen. Stat. § 52-64(a) should be limited to official-capacity claims), *aff'd on other grounds sub nom. Williams v. Riley*, 698 F. App'x 13 (2d Cir. 2017).

Because Field is proceeding *pro se*, the Court liberally construes his pleadings to raise the strongest arguments that they suggest. *See, e.g.*, *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156-57 (2d Cir. 2017) (*per curiam*). Still, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

As an initial matter, the plausibility standard requires that the complaint be evaluated by reference to its allegations of fact rather than its legal conclusions or factual speculation. *See Yamashita v. Scholastic Inc.*, --- F.3d ---, 2019 WL 4047513, at *5 (2d Cir. 2019) (*per curiam*) (affirming dismissal of complaint that was "fairly characterized as no more than a collection of speculative claims based on suspicion alone," because "[s]uch a complaint . . . neither complies with Rule 8 nor states a plausible claim for relief"); *PHL Variable Ins. Co. v. Town of Oyster Bay*, 929 F.3d 79, 89 (2d Cir. 2019) (court "not bound to accept as true a legal conclusion couched as a factual allegation" nor "to accept as true allegations that are wholly conclusory" (citation omitted)).

Moreover, the plausibility standard means that a complaint will fail if it alleges facts that establish nothing more than that a defendant engaged in conduct that is equally consistent with lawful acts and unlawful acts. *See Iqbal*, 556 U.S. at 678-80; *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017). "When faced with two possible explanations, only one of which can be true and only one of which results in liability, . . . [s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *In re Century Aluminum Co. Secs. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (internal quotation marks omitted).

1. ***Fourth Amendment***

Defendants argue that the complaint fails to allege a plausible claim for a violation of the Fourth Amendment to the U.S. Constitution. The Fourth Amendment protects the rights of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it further provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.[6]

The Fourth Amendment's protections apply only if there has been a "search" or "seizure" within the meaning of the Fourth Amendment. A "search" occurs either when the police intrude upon a person's reasonable expectation of privacy or if the police otherwise trespass upon one's person, house, papers, or effects for the purpose of acquiring information. *See Florida v. Jardines*, 569 U.S. 1, 6-10 (2013); *United States v. Jones*, 565 U.S. 400, 408 n.5 (2012).[7]

Thus, for example, "[w]hen a law enforcement officer physically intrudes on the curtilage [of the home] to gather evidence, a search within the meaning of the Fourth Amendment has occurred." *Collins v. Virginia*, 138 S. Ct. 1663, 1670 (2018). In general, the police may not conduct a search unless they have a warrant supported by probable cause or unless the

---

[6] Of course, a lawsuit under 42 U.S.C. § 1983 allows for a plaintiff to enforce the Fourth Amendment against an official who acts under color of state law. In light of section 1983, defendants are plainly incorrect when they argue that "the United States Supreme Court [has] held that victims of constitutional violations by officers of the federal government may have the right to recover for violations arising directly from the text of the United States Constitution," but "[t]here is no similar holding with respect to municipalities and its officials." Doc. #24-1 at 18. Equally errant is defendants' argument that a plaintiff's technical failure to cite section 1983 somehow precludes a court from considering a plaintiff's claim that municipal officers have violated his constitutional rights. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73, 77 (2d Cir. 2004); *Hillary v. Vill. of Potsdam*, 2015 WL 902930, at *5 n.6 (N.D.N.Y. 2015).

[7] Defendants err again when they claim that a Fourth Amendment "search" occurs only if an officer intrudes upon a person's reasonable expectation of privacy. Doc. #24-1 at 18-19. This argument ignores Supreme Court precedent holding that, even absent any intrusion on one's expectation of privacy, a Fourth Amendment "search" occurs when officers trespass upon a constitutionally protected area (such as the home or its curtilage) for the purpose of acquiring information. *See generally United States v. Richmond*, 915 F.3d 352, 356 (5th Cir. 2019) (discussing evolution of Fourth Amendment law).

circumstances fall within an exception to the Fourth Amendment's warrant requirement. *See, e.g.*, *Riley v. California*, 573 U.S. 373, 382 (2014).

As to Hartford Mayor Luke Bronin, the complaint does not allege any facts to suggest that he had any personal involvement in any "search" of Field's property. The complaint alleges only that Mayor Bronin failed to take action after being informed about what the other defendants had done and after any Fourth Amendment violation was wholly complete. Doc. #1-1 at 29 (¶ 36). Accordingly, I will dismiss Field's claim against Mayor Bronin. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (section 1983 liability requires evidence of individual defendant's personal involvement in constitutional violation).

As to defendant Lisa Silvestri, an attorney with the Office of Corporation Counsel, the complaint does not allege that she herself engaged in any "search" that occurred on Field's property. The complaint alleges only that she opined that what Faienza did "was legal and not subject to 4th [A]mendment or other restrictions." Doc. #1-1 at 16 (¶ 16). It is not clear whether this opinion was separate from one she gave over email, which spoke only to an officer's authority to issue a citation—a state law issue—and said nothing about entering Field's property. *Id.* at 40. Regardless, because the complaint does not allege facts to show that Silvestri instructed Espinoza or Faienza beforehand to violate Field's Fourth Amendment rights, as distinct from opining after the fact that what Faienza "was legal" and did not violate the Fourth Amendment, these facts do not show Silvestri's personal involvement in any constitutional violation to give rise to plausible grounds for relief.[8]

---

[8] The complaint argues that "[i]t is clear that defendant Silvestri advised defendant Espinoza and the police to fabricate a parking authority violation . . . and [to] violate the plaintiff's 4th [A]mendment USC rights by entering the plaintiff's property repeatedly to search and take photographs and to place the forged fraudulent citation on the plaintiff's car." Doc. #1-1 at 19 (¶ 20). These argumentative allegations are speculative and conclusory and do not give rise to plausible grounds for relief.

As to defendant Gustavo Espinoza, the complaint alleges that Faienza acted "at the direction" of Espinoza when he entered Field's property on October 5, 2016. Doc. #1-1 at 12 (¶ 13). But the complaint does not allege any facts to support Field's claims that Faienza acted at Espinoza's direction. Instead, the allegations of the complaint make clear that Field merely speculates that Espinoza was involved with Faienza: "There is no doubt in the plaintiff's mind that it was because no honest parking authority enforcement officer would set foot on private property without permission, and that Espinoza was aware that he could not legally do so, that defendant Espinoza recruited officer Faienza to do his dirty work from behind a police badge and gun." *Id.* at 13 (¶ 14).

Even assuming that the complaint alleged facts sufficient to support a violation of the Fourth Amendment by Faienza (who has not been named as a defendant), the complaint does not allege facts—as distinct from conclusory speculation—to establish plausible grounds to conclude that Espinoza was legally responsible for any violation by Faienza of Field's Fourth Amendment rights. *See, e.g.*, *Roberts v. Persona*, 2019 WL 1776965, at *8 (C.D. Cal. 2019) ("plaintiff's speculative and conclusory allegation that he 'believed' the actions of defendants Morgan and Pletting 'to be at the direction of defendant Persona' (Comp. ¶ 28) does not plausibly suggest that defendant Persona personally caused any alleged civil rights violation by such other defendants"); *see also Iqbal*, 556 U.S. at 679 (noting that "whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense" and "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'").

The complaint further alleges that Espinoza himself trespassed on Field's property on August 4, 2017, to tape a notice of violation on Field's front door. Doc. #1-1 at 20-21 (¶ 26). These allegations are not sufficient to allege a "search" for purposes of the Fourth Amendment. As noted above, a Fourth Amendment search occurs only if a government official intrudes upon a reasonable expectation of privacy or if the official otherwise trespasses on a person, his house, papers, or effects *for the purpose of acquiring information*. *See, e.g.*, *El-Nahal v. Yassky*, 835 F.3d 248, 254-55 (2d Cir. 2016). Absent such a purpose of acquisition of information, an officer's trespass on someone's property does not necessarily amount to a violation of the Fourth Amendment. *See Jones*, 565 U.S. at 408 n.5.

Here, there are no plausible grounds to conclude that Espinoza intruded upon any legitimate expectation of privacy when he entered Field's property to post a notice on the door. Nor does merely posting a notice on a front door of someone's house constitute a trespass that is done for the purpose of acquiring information. There are no plausible grounds to conclude that Espinoza engaged in a Fourth Amendment "search" when he posted a notice on Field's door. *See Widgren v. Maple Grove Twp.*, 429 F.3d 575, 580-81 (6th Cir. 2005) (code enforcement officer's posting of violation notice on front door of house did not constitute a "search" for Fourth Amendment purposes); *Kirk v. City of Oklahoma City*, 2014 WL 3419488, at *2 (W.D. Okla. 2014) (same).

To be sure, the Fourth Amendment also protects against unreasonable seizures. A "seizure" of property "occurs when there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992). But Espinoza's posting of a notice on Field's front door did not meaningfully interfere with Field's property interest. *See Marcavage v. Borough of Lansdowne, Pa.*, 493 F. App'x 301, 307-08 (3d

Cir. 2012) (no seizure when defendant posted summary eviction notice on plaintiff's door). Accordingly, the complaint does not allege facts as to Espinoza's actions on August 4, 2017, that give rise to plausible grounds for relief under the Fourth Amendment.

As to defendant Laura Settlemyer, the complaint does not allege that she conducted any kind of "search" or "seizure" on Field's property. The complaint alleges that Settlemyer "apparently" directed Espinoza to post the violation notice on Field's door. *Id.* at 20 (¶ 26). This equivocal and speculative allegation does not give rise to plausible grounds to conclude that Settlemyer actually directed Espinoza. Moreover, because Espinoza's posting of a notice on Field's door did not violate his Fourth Amendment rights, as discussed above, it follows that any direction by Settlemyer that he post such a notice did not violate the Fourth Amendment.

*Due process*

Field alleges that defendants violated his due process rights by initiating proceedings against him. The Fourteenth Amendment provides that a State shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The "standard analysis" for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

Even assuming that any of the defendants' actions resulted in some deprivation of a property or liberty interest, the complaint does not allege that Field was deprived of the process that he was due. As to the first violation stemming from Faienza's issuance of a citation on October 5, 2016, the complaint alleges that Field was able to appeal and that the violation was summarily dismissed on October 13, 2016. Doc. #1-1 at 20 (¶ 23). He received the process that

he was due—and won. As to the blight notice issued on August 4, 2017, the complaint does not allege facts to suggest that Field was denied a right to be heard and to contest this claim. Accordingly, Field has not alleged facts that give rise to plausible grounds for relief for his due process claim.

### *Equal protection*

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Ordinarily, a plaintiff may state a violation of the Equal Protection Clause when a governmental classification discriminates between entire classes or groups of people as well as when a classification singles out solely the plaintiff as a "class of one" for disparate treatment. *See Lanning v. City of Glens Falls*, 908 F.3d 19, 29 (2d Cir. 2018).

Absent a classification that burdens a suspect class or the exercise of a fundamental right, a government classification among different groups of persons does not run afoul of the Equal Protection Clause if there is any rational basis to support it. *See Heller v. Doe*, 509 U.S. 312, 319-20 (1993). Although Field alleges that he has mental disabilities, the Supreme Court has declined to require heightened scrutiny on account of disability. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 367-68 (2001). Accordingly, defendants' allegedly disparate treatment of Field did not run afoul of the Equal Protection Clause unless he can show a lack of any rational basis for their actions.

Moreover, a claim for violation of the Equal Protection Clause requires more than proof of unequal treatment or disparate impact; a plaintiff must plead and prove no less than intentional or purposeful discrimination as compared to otherwise similarly situated persons. *See Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68-69 (2d Cir. 2015); *Phillips v. Girdich*, 408 F.3d 124,

129 (2d Cir. 2005). Because the complaint does not allege facts concerning similarly situated comparators whom the individual defendants treated more favorably than Field, I will dismiss his equal protection claim.

*Municipal and official capacity claims*

Field also alleges constitutional claims within the scope of section 1983 against the City of Hartford and against the individual defendants in their official capacity. A municipality is not liable under a theory of *respondeat superior* for the unconstitutional actions of its employees; instead, a municipality may be liable only if an employee's violation of a plaintiff's constitutional rights was caused by a municipal policy, practice, or custom, or if it was caused by a municipality's deliberate indifference and inaction in light of a history of prior similar constitutional deprivations by municipal officers. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978); *Outlaw v. City of Hartford*, 884 F.3d 351, 372 (2d Cir. 2018).

Here, even if I assume that any of Field's constitutional rights were violated, Field has not alleged plausible and non-conclusory grounds to conclude that any such violation of his rights in connection with the incidents of October 2016 and August 2017 was the product of a municipal policy, practice, or custom. Accordingly, I will dismiss Field's claims against the City of Hartford and against the individual defendants in their official capacity.

*State law claims*

As to the remaining state law claims, there is no basis to conclude that there is complete diversity of citizenship between Field and the defendants as would be required to sustain federal jurisdiction in the absence of any remaining federal law claims. *See* 28 U.S.C. § 1332. I will otherwise decline to exercise supplemental jurisdiction over any state law claims. *See* 28 U.S.C.

§ 1367(c)(3); *see, e.g.*, *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117-18 (2d Cir. 2013).

## Conclusion

For the foregoing reasons, the Court GRANTS defendants' motion to dismiss (Doc. #24). To the extent that this ruling is based on the Court's conclusion that Field has not alleged sufficient facts to allow his claims to proceed, the Court's ruling is without prejudice to Field's filing of an amended complaint if he believes in good faith that he can truthfully allege sufficient facts to overcome the deficiencies identified in this ruling. Any amended complaint shall be filed by **October 9, 2019**. The Clerk of Court shall close this case in the meantime and without prejudice to re-opening in the event of the filing of an amended complaint.

It is so ordered.

Dated at New Haven this 9th day of September 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge